IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 24-cv-04793 |

**COMPLAINT**

Plaintiff Christian Dior Couture, S.A. ("Dior") hereby brings the present action against The Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Dior's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Dior substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Dior to combat e-commerce store operators who trade upon Dior's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including clothing and fashion accessories, using infringing and counterfeit versions of Dior's federally registered trademarks (the "Unauthorized Dior Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Unauthorized Dior Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Dior is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Unauthorized Dior Products over the Internet. Dior has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Dior is organized and existing under the laws of France with its principal place of business in Paris, France.

5. Dior is a world-famous couturier engaged in the business of styling and selling diverse articles of men's and women's apparel and fashion accessories. Dior is famous for its leadership, style, excellence, and quality in the field of fashion, and is widely recognized as one of the principal style innovators and leaders in the fashion field. Dior is engaged in the manufacture, sale and distribution of prestigious, high-quality, luxury merchandise, including a wide variety of clothing and fashion accessories, eyewear, leather goods, jewelry, watches and other similar items sold throughout the United States (collectively, the "Dior Products"), all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CHRISTIAN DIOR, DIOR, CD, and ▨ (the "Cannage Design"). Dior Products have become enormously popular and even iconic, driven by Dior's arduous quality standards and innovative designs. Among the purchasing public, genuine Dior Products are instantly recognizable as such. In the United States and around the world, the Dior brand has come to symbolize high quality, and Dior Products are among the most recognizable of their kind in the world.

6. Dior Products are distributed and sold to consumers through retailers throughout the United States in company-operated Dior boutiques and in high-quality department stores in Illinois such as Barneys, Bloomingdales, Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

7. Dior incorporates a variety of distinctive marks in the design of its various Dior Products. As a result of its long-standing use, Dior owns common law trademark rights in its trademarks. Dior has also registered its trademarks with the United States Patent and Trademark Office. Dior Products typically include at least one of Dior's registered trademarks. Often several Dior marks are displayed on a single product. Dior uses its trademarks in connection with the marketing of its Dior Products, including the following marks which are collectively referred to as the "CHRISTIAN DIOR Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK |
|---|---|
| 543,994 | |
| 580,207 | CHRISTIAN DIOR |
| 954,404 | |
| 1,123,944 | CD |
| 1,776,536 | [grid pattern design] |
| 1,872,313 | [grid pattern design] |
| 1,923,564 | Dior |

| REGISTRATION NUMBER | REGISTERED TRADEMARK |
|---|---|
| 2,240,163 | |
| 3,561,323 | |
| 2,749,176 | |
| 5,505,434 | J'ADIOR |
| 3,002,132 | |
| 2,790,589 | |

5

| REGISTRATION NUMBER | REGISTERED TRADEMARK |
|---|---|
| 4,541,171 | CD (logo) |
| 4,853,081 | CD (logo) |
| 1,816,812 | Christian Dior |

8. The CHRISTIAN DIOR Trademarks have been used exclusively and continuously in the U.S. by Dior and have never been abandoned. The above U.S. registrations for the CHRISTIAN DIOR Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CHRISTIAN DIOR Trademarks constitute *prima facie* evidence of their validity and of Dior's exclusive right to use the CHRISTIAN DIOR Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the U.S. Registration Certificates for the CHRISTIAN DIOR Trademarks included in the above table.

9. The CHRISTIAN DIOR Trademarks are exclusive to Dior and are displayed extensively on Dior Products and in Dior's marketing and promotional materials. Dior Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Dior has expended millions of dollars annually in advertising, promoting and marketing featuring the CHRISTIAN DIOR Trademarks. Dior Products have also been the subject of extensive unsolicited publicity resulting

from their high quality and popularity among high profile celebrities who don Dior Products at red carpet events. Because of these and other factors, the Dior name and the CHRISTIAN DIOR Trademarks have become famous throughout the United States.

10. The CHRISTIAN DIOR Trademarks are distinctive when applied to the Dior Products, signifying to the purchaser that the products come from Dior and are manufactured to Dior's quality standards. Whether Dior manufactures the products itself or licenses others to do so, Dior has ensured that products bearing its trademarks are manufactured to the highest quality standards. The CHRISTIAN DIOR Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the CHRISTIAN DIOR Trademarks is of incalculable and inestimable value to Dior.

11. Since at least as early as 1999, Dior has operated a website where it promotes Dior Products at dior.com. Dior Products are featured and described on the website and, since 2001, some of them are available for purchase. The dior.com website features proprietary content, images, and designs exclusive to Dior.

12. Dior has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the CHRISTIAN DIOR Trademarks. As a result, products bearing the CHRISTIAN DIOR Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Dior. Dior is a multi-million-dollar operation, and Dior Products have become among the most popular of their kind in the world.

13. Dior has also registered many of its works with the United States Copyright Office (the "Dior Copyrighted Works"). The registrations include, but are not limited to: "BEE" (U.S. Copyright Registration No. VA 657-906), issued by the Register of Copyrights on June 17, 1994;

"BEE" (U.S. Copyright Registration No. VA 655-762), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 657-903), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 657-904), issued by the Register of Copyrights on June 17, 1994; and "BEE" (U.S. Copyright Registration No. VA 657-905), issued by the Register of Copyrights on June 17, 1994. True and correct copies of the U.S. federal copyright registration certificates for the above-referenced Dior Copyrighted Works are attached hereto as **Exhibit 2**.

14. Among the exclusive rights granted to Dior under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Dior Copyrighted Works to the public.

15. Since their first publication, the Dior Copyrighted Works have been used on the Dior Products and are featured on Dior's website at dior.com. Dior Products featuring the Dior Copyrighted Works are advertised on Dior's website at dior.com.

**The Defendants**

16. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Dior. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics

8

used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Dior brand has resulted in significant counterfeiting of the CHRISTIAN DIOR Trademarks. Consequently, Dior has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Dior has identified many fully interactive e-commerce stores offering Unauthorized Dior Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, DHgate, Temu, and Etsy, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According a to U.S. Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 3**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the*

9

*Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 24, 2020) attached as **Exhibit 5** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-87.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Unauthorized Dior Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to

distinguish such stores from an authorized retailer. Dior has not licensed or authorized Defendants to use any of the CHRISTIAN DIOR Trademarks, and none of the Defendants are authorized retailers of genuine Dior Products.

22. Many Defendants also deceive unknowing consumers by using the CHRISTIAN DIOR Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Dior Products. Other e-commerce stores operating under the Seller Aliases omit using CHRISTIAN DIOR Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Dior Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Dior Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating

under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Dior Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that many of the Unauthorized Dior Products may be manufactured by and come from a common source and that Defendants are interrelated.

26. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Dior's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Dior. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Dior Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Dior, have jointly and severally, knowingly and willfully used and continue to use

the CHRISTIAN DIOR Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Dior Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the CHRISTIAN DIOR Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Dior Products, including the sale of Unauthorized Dior Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Dior.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Dior hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CHRISTIAN DIOR Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CHRISTIAN DIOR Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Dior Products offered, sold or marketed under the CHRISTIAN DIOR Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CHRISTIAN DIOR Trademarks without Dior's permission.

33. Dior is the exclusive owner of the CHRISTIAN DIOR Trademarks. Dior's United States Registrations for the CHRISTIAN DIOR Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Dior's rights in the CHRISTIAN

DIOR Trademarks, and are willfully infringing and intentionally using counterfeits of the CHRISTIAN DIOR Trademarks. Defendants' willful, intentional and unauthorized use of the CHRISTIAN DIOR Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Dior Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Dior has no adequate remedy at law, and if Defendants' actions are not enjoined, Dior will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CHRISTIAN DIOR Trademarks.

36. The injuries and damages sustained by Dior have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Dior Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37. Dior hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Dior Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Dior or the origin, sponsorship, or approval of Defendants' Unauthorized Dior Products by Dior.

39. By using the CHRISTIAN DIOR Trademarks on the Unauthorized Dior Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Dior Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Dior Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Dior has no adequate remedy at law and, if Defendants' actions are not enjoined, Dior will continue to suffer irreparable harm to its reputation and the goodwill of its Dior brand.

## PRAYER FOR RELIEF

WHEREFORE, Dior prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CHRISTIAN DIOR Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Dior Product or is not authorized by Dior to be sold in connection with the CHRISTIAN DIOR Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Dior Product or any other product produced by Dior, that is not Dior's or not produced under the authorization, control, or supervision of Dior and approved by Dior for sale under the CHRISTIAN DIOR Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Dior Products are those sold under the authorization, control or supervision of Dior, or are sponsored by, approved by, or otherwise connected with Dior;

      d. further infringing the CHRISTIAN DIOR Trademarks and damaging Dior's goodwill; and

      e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Dior, nor authorized by Dior to be sold or offered for sale, and which bear any of Dior's trademarks, including the CHRISTIAN DIOR Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Dior's choosing, the registrant of the Domain Names shall be changed from the current registrant to Dior, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Registry Services, LLC, Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Dior's selection, and that the domain name registrars, including, but not limited to, GoDaddy.com, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Dior's selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Dior's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, DHgate, Temu, and Etsy (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CHRISTIAN DIOR Trademarks;

16

4) That Defendants account for and pay to Dior all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CHRISTIAN DIOR Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Dior be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CHRISTIAN DIOR Trademarks;

6) That Dior be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 10th day of June 2024.   Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Quinn B. Guillermo
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
qguillermo@gbc.law

*Counsel for Plaintiff Christian Dior Couture, S.A.*